ISRAEL DECROW AND ALS. *versus* WALDO MUT. INS. Co.

Where a policy of insurance upon a vessel provides that the insurers shall not be answerable for any loss which may arise in consequence of seizure for or on account of illicit or prohibited trade, or trade in articles contraband of war, but the judgment of a foreign colonial court shall not be conclusive of those facts; such judgment is *prima facie* evidence of the facts, and must be held conclusive in the absence of proof to impeach it.

An *attempt* to trade in violation of law is within the provisions of such policy.

ON FACTS AGREED.

This is an action brought upon a policy of insurance effected upon the bark Georgiana.

The parties agree that plaintiffs, at the time when said policy was effected, and when said bark was captured and condemned, were the owners of her. That she sailed from New Orleans on or about the 25th of April, 1850, was seized by a Spanish vessel of war on or about the 18th of May following, carried to Havana, and there, in the month of July following, by a legal tribunal of the country, condemned, upon the ground that she was employed in the "Lopez Expedition," so called, against the island of Cuba. She was sold under the decree of said tribunal, and passed beyond the control of plaintiffs and defendants, and that neither have ever regained possession of her.

It is further agreed that on the 17th of September following plaintiffs abandoned said bark to defendants, and on the 22d of November following furnished to defendants a state-

ment of the circumstances attending her capture and condemnation.

The writ, policy, depositions of Joseph A. Graffam, Edward Watts, Albert Sleeper, and Henry Dockham, make a part of the case.

Judgment is to be rendered by the Law Court according to the legal rights of the parties.

*W. G. Crosby*, counsel for the plaintiffs.

*H. O. Alden*, counsel for the defendants.

HATHAWAY, J. By the policy upon which this action was brought, " It is agreed that the insurers shall not be answerable for any loss which may arise in consequence of seizure for or on account of illicit or prohibited trade, or trade in articles contraband of war, but the judgment of a foreign colonial court shall not be conclusive upon the parties as to the fact of there having been articles contraband of war on board, or as to the fact of an attempt to trade in violation of the laws of nations."

The United States were at peace with Spain, of which Cuba was a colony, and by the facts agreed, it appears that the bark Georgiana was seized by a Spanish vessel of war, carried to Havana, and there, by a legal tribunal of the country, condemned, upon the ground that she was employed in the " Lopez Expedition," so called, against the island of Cuba; that she was sold under a decree of said tribunal, and passed beyond the control of the plaintiffs, and that she was subsequently abandoned to the defendant company.

Cuba being a colony of Spain, and the tribunal by which the judgment was rendered being a colonial tribunal, by the terms of the policy, the judgment by which the bark was condemned was not conclusive upon the parties, of the facts which would render her liable to condemnation. But although not conclusive, it was *prima facie* evidence of those facts, and must be held conclusive in the absence of proof to impeach it.

If the Georgiana sailed on an unlawful expedition against Cuba, and being prevented by adversary winds and currents from entirely accomplishing the object designed, had forwarded by the Creole the men and munitions of war, in pursuance of the original purpose, the facts that at the time of the seizure by the Spanish vessel of war, there were no men on board her who were engaged in the contemplated invasion, and that there were no arms, or ammunition *then* on board, would constitute no sufficient grounds for her release from liability to seizure and condemnation for what she had already done in the illicit enterprise, under the direction of the master then having charge of her.

She had performed the outward voyage to the extent of her immediate ability as a sailing vessel, at least, so far that the use of the more certain speed produced by the power of steam, was deemed expedient to complete it, which was probably originally anticipated, for the mate, Graffam, testified that she had on board about a thousand barrels of coal, which the steamer Creole received with the passengers and arms; and the case discloses no other purpose for which the coal was destined.

It was sufficient that "an attempt" to trade, &c., in violation of the laws of nations, should have been proved.   The attempt was made, and partially accomplished by the Georgiana, and was in progress towards completion by the aid of another agent, the steamer *Creole*, to which the bark had furnished the coal convenient or necessary to enable the steamer to finish what the bark had commenced and partly performed.   The two vessels apparently were acting in concert, for the accomplishment of the common purpose.

The plaintiffs cannot avail themselves of their ignorance "that the passengers, &c., were destined for the invasion of Cuba," as their counsel contends.   Their agent, the master of the bark was one of the owners, and is one of the plaintiffs.   Their ignorance of the hazardous character of the voyage for which he chartered her, could have no effect upon her liability to seizure and condemnation in a foreign

port, for a violation of the laws of nations, and therefore could have no effect upon the legal rights or liabilities of the parties in this suit. But the evidence contained in the depositions of Graffam, Sleeper and Watts, leaves no reasonable doubt that the master, when he chartered the bark in New Orleans, was well aware of the character of the business in which she was to be employed. His repentance came too late, when, as Graffam testified, he " tried to induce a majority of those on board to agree to return to New Orleans."

The enterprise had been commenced, and was in progress —the risk had been incurred.

He had advanced so far in his transgression that his repentance, *then*, could not save the bark.

The testimony contained in the depositions confirms the correctness of the decision by which the bark was condemned.

*Plaintiff nonsuit.*